## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: HANGTIME TELEPHONE CONSUMER PROTECTION ACT LITIGATION | MDL Docket No. 2563 |

## PLAINTIFFS GOODMAN'S, SIMS', AND SALAM'S RESPONSE IN OPPOSITION TO DEFENDANT HANGTIME INC.'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1407

**Respectfully Submitted By:**

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Zachary Goodman*

David Pastor
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel:  617.742.9700

*Counsel for Plaintiff Derrick Sims*

Katrina Carroll
kcarroll@litedepalma.com
LITE DEPALMA GREENBERG, LLC
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel: 312.750.1591

*Counsel for Plaintiff Ismael Salam*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

I.     The First-Filed *Goodman* Action ........................................................................3

II.    The Later-Filed Actions ........................................................................................3

III.   The Self-Consolidation of the *Goodman*, *Sims*, and *Salam* Cases ..................4

IV.   Despite Hangtime's Resistance, Litigation and Discovery in the *Goodman*
Action Is Well Underway. ......................................................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT ........................................................................................................................6

I.     Hangtime's Motion to Centralize and Transfer the Related Actions Should
be Denied as Premature and Unnecessary. .........................................................6

       A.    Hangtime's Motion to Transfer Is Premature Because it has Failed
to Establish that Reasonable—and More Efficient—Alternatives
Are Inappropriate. ..................................................................................6

       B.    The Related Actions—Pending in Only Two Districts—Are Not Overly
Complicated and Involve Straightforward Discovery, and Therefore
Transfer Under Section 1407 Is Unnecessary. ......................................9

II.    Should the JPML Find MDL Centralization and Transfer Appropriate, the
Related Actions Should be Transferred to the Northern District of Illinois. ....11

       A.    A Majority of the Plaintiffs Agree that the Related Actions Should be
Transferred to the Northern District of Illinois. ...................................12

       B.    Three of the Four Related Actions Are Pending in the Northern District of
Illinois, and the Litigation Has Progressed the Furthest in this District. .......13

       C.    The Northern District of Illinois, and Judge Bucklo in Particular,
Have the Capacity and Expertise to Preside over the Related Actions. .........15

       D.    Transfer to the Northern District of California Will Not Further the
Efficient Conduct of this Litigation. ......................................................17

CONCLUSION ..................................................................................................................19

## TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases:**

*CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. 2010) ....................................19

**United States District Court Cases**:

*5381 Partners LLC v. Shareasale.com, Inc.*,
 No. 12-cv-4263, 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ........................................18

*Charvat v. Allstate Corp.*,
 No. 13-cv-7104, 2014 WL 866377 (N.D. Ill. Mar. 5, 2014) ............................................16

*Desai v. ADT Sec. Servs., Inc.*,
 No. 11-cv-1925, 2011 WL 2837435 (N.D. Ill. July 18, 2011) .........................................16

*Garrett v. Ragle Dental Lab., Inc.*,
 No. 10-cv-1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010) .........................................16

*In re McDonald's French Fries Litig.*, No. 06-cv-4467 (N.D. Ill.) ............................................16

*In re Synthroid Mktg. Litig.*, No. 97-cv-6017 (N.D. Ill.) ................................................16

*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013)............................................15

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010)..................15

**Judicial Panel on Multidistrict Litigation:**

*In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liab. Litig.*,
 406 F. Supp. 540 (J.P.M.L. 1975) ....................................................................................14

*In re Air Crash Over Hudson River Near New York, New York, On August 8, 2009*,
 716 F. Supp. 2d 1360 (J.P.M.L. 2010)...........................................................................7, 8

*In re Air Crash At Las Vegas, Nevada, On August 28, 2008*,
 716 F. Supp. 2d 1366 (J.P.M.L. 2010).............................................................................10

*In re Am. Exp. Co. Anti-Steering Rules Antitrust Litig.*,
 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009)....................................................................11

*In re ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d 1361 (J.P.M.L. 2004) ....................7

*In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*,
 804 F. Supp. 2d 1376 (J.P.M.L. 2011)........................................................................6, 7, 8

*In re Capital One Tel. Consumer Prot. Act Litig.*,
 908 F. Supp. 2d 1366 (J.P.M.L. 2012)..............................................................................15

*In re Celotex Corp. "Technifoam" Products Liab. Litig.*,
 68 F.R.D. 502 (J.P.M.L. 1975) ........................................................................................14

*In re Commercial Lighting Products, Inc. Contract Litig.*,
  415 F. Supp. 392 (J.P.M.L. 1976)...................................................................................10

*In re DirectBuy, Inc., Mktg. & Sales Practices Litig.*,
  682 F. Supp. 2d 1349 (J.P.M.L. 2010)...........................................................................18

*In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*,
  829 F. Supp. 2d 1376 (J.P.M.L. 2011)........................................................................7, 12

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
  939 F. Supp. 2d 1374 (J.P.M.L. 2013)...........................................................................13

*In re European Rail Pass Antitrust Litig.*,
  MDL No. 1386, 2001 WL 587855 (J.P.M.L. Feb. 7, 2001) ...........................................13

*In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*,
  853 F. Supp. 454, 455 (J.P.M.L. 1993)...........................................................................12

*In re Gerber Probiotic Products Mktg. & Sales Practices Litig.*,
  899 F. Supp. 2d 1378 (J.P.M.L. 2012)..............................................................................8

*In re High Pressure Laminate Antitrust Litig.*,
  MDL No. 1368, 2000 WL 33180479 (J.P.M.L. Oct. 6, 2000) ........................................13

*In re IBM*, 302 F. Supp. 796 (J.P.M.L. 1969) ....................................................................14

*In re Koratron*, 302 F. Supp. 239 (J.P.M.L. 1969) ...........................................................13

*In re L. E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054 (J.P.M.L. 1975)......................14

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab. Litig. (No. II)*,
  MDL No. 2502, -- F. Supp. 2d. --, 2014 WL 661589 (J.P.M.L. Feb. 18, 2014) ..............12

*In re Medtronics Intern., Inc., Telephone Consumer Protection Act Litigation*,
  -- F. Supp. 2d. --, 2013 WL 6705167 (J.P.M.L. 2013) ...................................................12

*In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig.*,
  588 F. Supp. 2d 1374 (J.P.M.L. 2008).............................................................................13

*In re Pan Am. World Airways, Inc. Maternity Leave Policies Litig.*,
  414 F. Supp. 1232 (J.P.M.L. 1976)...................................................................................9

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  173 F. Supp. 2d 1377 (J.P.M.L. 2001)........................................................................12, 15

*In re S. Ry. Employment Practices Litig.*, 441 F. Supp. 926 (J.P.M.L. 1977) ...............11

*In re Scotch Whiskey*, 299 F. Supp. 543 (J.P.M.L. 1969) ..........................................9, 10

*In re SIGG Switzerland (USA), Inc., Aluminum Bottles Mktg. and Sales Pracs. Litig.*,
  682 F. Supp. 2d 1347 (J.P.M.L. 2010).............................................................................12

*In re Ski Train Fire In Kaprun, Austria, on November 11, 2000*
  175 F. Supp. 2d 1379 (J.P.M.L. 2001).............................................................................12

*In re Transocean Ltd. Sec. Litig. (No. II),* 753 F. Supp. 2d 1373 (J.P.M.L. 2010)........................9

*In re U.S. Postal Serv. Privacy Act Litig.*, 545 F. Supp. 2d 1367 (J.P.M.L. 2008) ......................12

**Statutory Provisions:**

28 U.S.C. § 1407...............................................................................................................6, 8

Fed. R. Civ. P. 45(c)(1)(A) ..............................................................................................18

**Miscellaneous Authorities:**

Federal Judicial Center, Manual for Complex Litigation (Fourth) § 20.131 (2013) ....................12

*Manual for Complex Litigation*, Fourth § 20.131 (2004) ...............................................................9

*MDL Statistics Report – Distribution of Pending MDL Dockets*, United States Judicial Panel on Multidistrict Litigation, *available at* http://www.jpml.uscourts.gov/pending-mdls-0 (last accessed July 8, 2014)...............................................................................................................................16

*United States District Courts – National Judicial Caseload Profile*, United States Courts, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagement Statistics/district-courts-december-2013.aspx (last accessed July 8, 2014) .................................16

## INTRODUCTION

Plaintiffs Zachary Goodman, Derrick Sims, and Ismael Salam (collectively "Plaintiffs") submit this response to Defendant Hangtime, Inc.'s ("Hangtime") motion to centralize four related class actions in the Northern District of California.  The four Related Actions—listed in the order in which they were filed—are:

(1)    *Goodman v. Hangtime, Inc.*, No. 1:14-cv-01022 (N.D. Ill.), filed on January 16, 2014 and removed to the Northern District of Illinois on February 13, 2014;

(2)    *Salam v. Hangtime, Inc., et al.*, No. 1:14-cv-01252 (N.D. Ill.), filed on February 19, 2014;

(3)    *Sims v. Hangtime, Inc.*, No. 1:14-cv-10427 (D. Mass.), filed on February 26, 2014; and

(4)    *Kozlow v. Hangtime, Inc.*, No. 4:14-cv-02249 (N.D. Cal.), filed on May 15, 2014.

(Dkt. 1-1 at 1-2.)  Each of these cases allege that Hangtime violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 by sending promotional text messages to consumers' cell phones without consent.  As discussed below, centralization is both unnecessary in light of the plaintiffs' successful self-consolidation efforts, and inappropriate under 28 U.S.C. § 1407.

First, Hangtime's motion is unnecessary because the plaintiffs in *Goodman*, *Sims*, and *Salam* have already coordinated the prosecution of their lawsuits and taken steps to consolidate their cases—for all purposes—before a single District Judge, without the necessity of intervention by the JPML.  Specifically, as a result of Plaintiffs' efforts, plaintiff Sims has already moved to voluntarily dismiss his case from the District of Massachusetts, and has already been added as a party-plaintiff to the first-filed *Goodman* action.  Likewise, plaintiff Salam has also agreed to consolidate his action into the *Goodman* action, and to that end, the plaintiffs in *Goodman* have already moved to reassign and consolidate the *Salam* action for all purposes.

1

This leaves actions pending in only two districts—the consolidated *Goodman* matter in the Northern District of Illinois and the last-filed *Kozlow* matter in the Northern District of California.  With actions now pending in only two districts, Hangtime has better and more efficient alternatives to eliminate the multidistrict nature of these actions, including moving to transfer *Kozlow* under 28 U.S.C § 1404 or moving to dismiss or stay *Kozlow* under the first-to-file doctrine.

Second, Hangtime fails to meet its burden under § 1407.  This is not the kind of factually complex litigation that warrants the JPML's involvement, especially given that the actions are pending in only two districts.  Indeed, discovery in TCPA cases such as this will be relatively straightforward, predominantly electronic, and can easily be coordinated among the parties so as to minimize any conceivable duplication.

In any event, should the JPML find MDL centralization necessary, the Northern District of Illinois is the most appropriate forum.  First, a majority of the actions (three of the four), including the first-filed *Goodman* action, are pending in the Northern District of Illinois.  Second, a majority of the parties support consolidation in the Northern District of Illinois.  Third, the *Goodman* action is the only case in which litigation has materially progressed—indeed, Goodman has already amended the pleadings to add Sims as a party-plaintiff, successfully opposed Hangtime's motion to stay the action during the pendency of the MDL proceedings, served his Rule 26(a)(1) disclosures, propounded discovery on Hangtime and Hook Mobile, Inc. (the Virginia-based vendor that Hangtime hired to send the text messages at issue), and issued subpoenas to relevant third parties.  Fourth, the Northern District of Illinois, in general, and Judge Bucklo, in particular have handled numerous MDLs in the past and have substantial experience overseeing TCPA class actions like those at issue here.  And finally, until today (July

8, 2014), no district judge had even been assigned to the last-filed *Kozlow* matter.  As such, there is no reason to uproot and transfer three consolidated cases pending before Judge Bucklo to a court with no prior experience in this litigation.

For all these reasons and as discussed further below, Hangtime's motion for transfer should be denied, and in the event that the JPML finds centralization to be warranted, the Related Actions should be transferred to the Northern District of Illinois before the Honorable Elaine E. Bucklo.

## BACKGROUND

### I.      The First-Filed *Goodman* Action

On January 16, 2014, Goodman brought the first filed action against Hangtime in Cook County, Illinois, which was subsequently removed to the Northern District of Illinois and assigned to the Honorable Judge Bucklo.  (See *Goodman*, Dkt. 1-1, Ex. A.)  In his Complaint, Goodman, on his own behalf and on behalf of a nationwide class of individuals, sought relief from Hangtime for its alleged violations of the TCPA.  (*Id.*)  On March 31, 2014, after an extension of time, Hangtime Answered Plaintiff's Complaint.  (*Id.* Dkts. 8, 16.)  On June 6, 2014, following a scheduling conference of the parties, Judge Bucklo entered a scheduling Order setting case and discovery deadlines.  (*Id.* Dkt. 20.)

### II.     The Later-Filed Actions

On February 19, 2014, one month after Goodman filed his action against Hangtime, the *Salam* action was filed in the Northern District of Illinois, and on February 26, 2014, the *Sims* action was filed in the District of Massachusetts.  (*See Salam*, Dkt. 1; *Sims*, Dkt. 1.)  And on May 15, 2014—four months after the *Goodman* action was filed—the *Kozlow* matter was filed in the Northern District of California.  (*See Kozlow*, Dkt. 1.)  While the *Salam* plaintiff filed an

amended complaint naming Hook Mobile as a party-defendant (*Salam*, Dkt. 9), participated in a Rule 26(f) conference, and served written discovery requests on both defendants (all prior to the filing of Goodman's motion to relate, reassign, and consolidate the two cases), little to no activity has occurred in the *Sims* and *Kozlow* cases.  In fact, the *Kozlow* action didn't even get assigned a district judge until the date of this filing—July 8, 2014.  (*Kozlow*, Dkt. 20.)

## III.   The Self-Consolidation of the *Goodman*, *Sims*, and *Salam* Cases

In an effort to conserve time and resources, the plaintiffs in the *Goodman*, *Salam*, and *Sims* cases have been working together to self-consolidate their respective lawsuits.  To that end, counsel for Goodman met and conferred with counsel for Sims to discuss the coordination of their client's respective actions, and agreed that it would be in the interests of judicial economy and efficiency to litigate their clients' claims together in one lawsuit.  Sims therefore agreed to voluntarily dismiss his action to join the *Goodman* action, (*Sims*, Dkt. 16), and Goodman simultaneously sought leave to file an amended complaint adding Sims as a party-plaintiff to his Northern District of Illinois action. (*Goodman*, Dkt. 32).  That motion was granted over Hangtime's objection[1] on July 3, 2014, and on July 7, 2014, Goodman and Sims filed their First

---

[1]   Hangtime's conduct in the *Goodman*, *Sims*, and *Salam* matters belies any argument that it is interested in centralization for the purposes of streamlining the litigation and increasing efficiency, as it claims.  To be sure, Hangtime has attempted to block the Plaintiffs' various efforts to work cooperatively to achieve these goals.  Indeed, when Sims asked for Hangtime's consent to dismiss his action in the District of Massachusetts so that he could be added to the first-filed *Goodman* action pending in the Northern District of Illinois, Hangtime refused, and when Sims filed a motion to voluntarily dismiss his action, Hangtime opposed it, arguing that dismissal should be conditioned on Sims' payment of Hangtime's attorneys' fees.  (*Sims*, Dkt. 18.)  Likewise, when Goodman asked for Hangtime's consent to add Sims as a party-plaintiff in the *Goodman* matter, Hangtime refused, and then opposed Goodman's motion for leave to amend.  (*Goodman*, Dkt. 29.)  And when Goodman and Sims asked for Hangtime's consent to consolidate the *Salam* and *Goodman* matters, Hangtime refused and indicated that it would oppose Plaintiffs' motion.  (*Goodman*, Dkt. 33 n.1).  Thus, impassioned pleas aside, the record shows that Hangtime has no interest in streamlined or efficient litigation, and its request for JPML intervention should fall on deaf ears.

4

Amended Complaint.  (Dkt. 32.)

Similarly, counsel for Goodman and Salam have met and conferred and determined that it is in the best interests of judicial economy and efficiency to consolidate their actions as well.  To that end, on July 7, 2014, Goodman moved to reassign and consolidate the *Salam* matter with the *Goodman* matter.  (*Goodman*, Dkt. 33.)  Thus, three of the four Related Actions will soon be consolidated before Judge Bucklo for all purposes.

Practically speaking, there are not four actions pending against Hangtime, but two—the consolidated *Goodman* matter in the Northern District of Illinois, and the last-filed *Kozlow* action in the Northern District of California.

## IV.   Despite Hangtime's Resistance, Litigation and Discovery in the *Goodman* Action Is Well Underway

The *Goodman* matter has been pending for five months and litigation is moving forward. On June 6, 2014, the parties received a case management order from Judge Bucklo setting case and discovery deadlines.  (*Goodman*, Dkt. 20.)  On July 3, 2014, the Court granted—over Hangtime's objection—Goodman's motion for leave to amend to add Sims as a party-plaintiff, and denied Hangtime's motion to stay the *Goodman* action until its pending motion to transfer has been resolved by the JPML.  (*Goodman*, Dkt. 31.)  And on July 7, 2014, following the denial of Hangtime's motion to stay, Goodman and Sims moved to reassign and consolidate the *Salam* action before Judge Bucklo for all purposes.  (Dkt. 33.)

Throughout this time, discovery has also been moving forward at a fast clip.  Goodman propounded his first sets of written discovery on Hangtime on June 10, 2014, served his Rule 26(a)(1) disclosures on July 2, 2014, and served a Rule 30(b)(6) deposition notice on Hangtime for August 13, 2014.  Goodman has also proceeded with third-party discovery, and has issued subpoenas on Hook Mobile (Hangtime's marketing partner that was involved in the text message

transmissions at issue in this case), Cellco Partnership d/b/a Verizon Wireless (Goodman's telephone carrier) and Neustar, Inc. (which has information regarding the phone number that Hangtime used to transmit its alleged unsolicited text messages).

## LEGAL STANDARD

In deciding whether to grant a request for centralization and transfer, the JPML considers whether: (1) the actions involve one or more common questions of fact, (2) transfer would serve the convenience of the parties and witnesses, and (3) transfer would promote the just and efficient conduct of the litigation.  28 U.S.C. § 1407(a).  The party moving for centralization has the burden of establishing "the need for centralization."  *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L 2011).

## ARGUMENT

**I.**   **Hangtime's Motion to Centralize and Transfer the Related Actions Should Be Denied as Premature and Unnecessary.**

While Goodman agrees that the Related Actions do "involve the same legal and factual issues against a common defendant," (Dkt. 1-1 at 4), consolidation and transfer will not promote the efficient conduct of the litigation for two reasons.  First, the motion is premature.  Hangtime has not attempted any alternative to transfer under Section 1407, and the Parties are well on their way to consolidating the actions for all purposes without JPML intervention.  Second, the motion is unnecessary.  This is simply not the kind of complex, discovery-heavy litigation where the pursuit of two overlapping actions—the *Goodman* and *Kozlow* Actions—requires MDL consolidation and transfer.  Accordingly, Hangtime's motion to transfer should be denied.

**A.**   **Hangtime's Motion to Transfer Is Premature Because It Has Failed to Establish that Reasonable—and More Efficient—Alternatives Are Inappropriate.**

The party moving for MDL centralization and transfer has the "burden of demonstrating

the need for centralization, particularly given the availability of Section 1404." *In re: Best Buy Co., Inc.*, 804 F. Supp. 2d at 1379; *see also In re: Air Crash Over Hudson River Near New York, New York, On August 8, 2009*, 716 F. Supp. 2d 1360 (J.P.M.L. 2010) ("While transfer under Section 1407 for pretrial purposes can streamline litigation, thereby benefitting the parties and the courts, *transfer under Section 1404(a) for all purposes should be attempted, where appropriate.*") (emphasis added).  Indeed, as the JPML has reiterated, "centralization under Section 1407 should be the last solution after considered review of all other options." *In re: Best Buy Co., Inc.*, 804 F. Supp. 2d at 1378.  This is particularly true where the parties are well on their way to consolidating the pending actions in a single district without JPML involvement. *See In re ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d 1361, 1362 (J.P.M.L. 2004) (denying a motion to transfer because "[t]he multidistrict character of the five actions embraced by the Section 1407 motion presently before us may be eliminated" by pending motions to transfer); *In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) ("we have denied centralization where there is a 'reasonable prospect' that the resolution of Section 1404 motions could eliminate the multidistrict character of the actions before us.").

Here, *Sims* has already moved to voluntarily dismiss his action and has joined the *Goodman* action as a party-plaintiff, effectively consolidating those actions.  Further, Goodman and Salam have agreed that their actions should be consolidated, and to that end, Goodman has already moved the Court to reassign and consolidate the *Salam* Action before Judge Bucklo for all purposes.  Thus, litigation remains pending in only two districts, and three of the four Related Actions are pending before a single judge.

There are a multitude of options left for Hangtime to centralize and transfer the sole

remaining action—*Kozlow*—to the Northern District of Illinois, including seeking a transfer

under Section 1404 or seeking dismissal or a stay of *Kozlow* under the first-to-file doctrine.  *See*

*In re: Gerber Probiotic Products Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380

(J.P.M.L. 2012) (suggesting alternatives to Section 1407, including transfer under Section 1404,

seeking dismissal or stay under the first-to-file doctrine, and cooperation among the parties).

Hangtime, however, has not attempted any alternative to Section 1407, let alone established why

such alternatives are unavailable, and has in fact only stood in the way of the parties' efforts to

cooperate and bring the Actions before a single judge, opposing Sims' motion to voluntarily

dismiss (*Sims*, Dkt. 18), opposing Goodman's motion for leave to amend to add Sims as a party-

plaintiff (*Goodman*, Dkt. 29), and objecting to Goodman's and Sims' motion to reassign and

consolidate the *Salam* matter.  By doing so, it appears Hangtime is only interested in making

things more efficient if the matters are consolidated in the venue that it prefers.  But the Northern

District of Illinois, where two of the four plaintiffs reside, is just as appropriate a forum as the

Northern District of California, where Hangtime is headquartered.  In any event, with all these

other options for transfer still on the table—and having not even been pursued—Hangtime has

failed to meet its "burden of demonstrating the need for centralization."  *In re: Best Buy Co.,*

*Inc.*, 804 F. Supp. 2d at 1379; *see also In re: Air Crash Over Hudson River*, 716 F. Supp. 2d at

1360.[2]

     Hangtime's request to transfer—which preceded any effort to consolidate without JPML

intervention, and which can be easily achieved for all purposes without JPML intervention—

---

[2]     Goodman notes that transfer under Section 1404 is also more efficient and desirable than transfer under Section 1407.  *See In re: Best Buy Co., Inc.*, 804 F. Supp. 2d at 1378 ("While Section 1407 employs a mechanism for future related actions, transfer is not automatic, nor is it permanent as it is under Section 1404.  Provided that Section 1404 transfer is granted, such a transfer is for all purposes and not, as is the case with centralization under Section 1407, for pretrial purposes only.")

should be denied as premature.

**B.      The Related Actions—Pending in Only Two Districts—Are Not Overly Complicated and Involve Straightforward Discovery, and Therefore Transfer Under Section 1407 Is Unnecessary.**

Where only a few actions are involved, which are neither factually complex nor discovery-heavy, transfer and consolidation under Section 1407 does not promote the just and efficient conduct of the litigation.  *See In re Pan Am. World Airways, Inc. Maternity Leave Policies Litig.*, 414 F. Supp. 1232, 1233-34 (J.P.M.L. 1976) (finding that "transfer under Section 1407 would not promote the just and efficient conduct of the litigation" where "only two actions are involved . . . [a]nd whatever common factual questions that may exist are . . . not complex enough or the accompanying discovery so time consuming as to justify transfer."); *see also In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (denying MDL transfer where "[t]he two cases [were] not . . . exceptional cases sharing unusually complex questions of fact."); *In re Transocean Ltd. Sec. Litig. (No. II),* 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010) ("where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization."); *Manual for Complex Litigation*, Fourth § 20.131 (2004) ("those advocating transfer bear a heavy burden of persuasion when there are only a few actions, particularly those involving the same parties and counsel.")

Here—given that Sims has already been added as a named-plaintiff to the *Goodman* matter and Goodman and Sims have already moved to reassign and consolidate *Salam*—there are only two actions left pending in only two districts: the first-filed *Goodman* matter and the fourth and last-filed *Kozlow* matter.  These actions do not present overly complex factual matters. Rather, as Hangtime recognizes, these actions stem from "the legal and factual theory that Hangtime used an [automatic telephone dialing system] to send unauthorized text messages in

violation of the TCPA." (Dkt. 1-1 at 2.) This fails to meet Hangtime's "strong burden to show that the common questions of fact are so complex" as to warrant consolidation and transfer under Section 1407. *In re Commercial Lighting Products, Inc. Contract Litig.*, 415 F. Supp. 392, 393 (J.P.M.L. 1976). Moreover, as the nature of the Related Actions indicate, the discovery to be conducted includes the type of equipment Hangtime used and whether Hangtime obtained the requisite consent to send promotional text messages to the putative Class members. With discovery as straightforward as this, Hangtime simply cannot meet its "strong burden to show that . . . the accompanying discovery [is] so time-consuming" that consolidation and transfer will "serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *Id.*

Hangtime, for its part, believes that—simplicity of the cases aside—consolidation and transfer under Section 1407 is warranted because (1) there is a risk of duplicative discovery, and (2) there is a risk of inconsistent class determinations. (Dkt. 1-1 at 4-5.) These arguments do not justify Section 407 transfer either. The mere risk of duplicative discovery hardly warrants MDL treatment—indeed the JPML has frequently noted that parties are fully capable of "conduct[ing] pretrial proceedings so that inconvenience to all parties and witnesses can be minimized and duplicate discovery can be avoided." *In re Scotch Whiskey*, 299 F. Supp. at 544; *see also In re Commercial Lighting Products, Inc.*, 415 F. Supp. at 393 ("Defendants, and plaintiff as well, can take certain measures in order to avoid duplicative discovery."); *In re: Air Crash At Las Vegas, Nevada, On August 28, 2008*, 716 F. Supp. 2d 1366, 1367 (J.P.M.L. 2010) ("We encourage the parties to pursue alternatives to transfer to minimize whatever possibilities may arise of duplicative discovery and/or inconsistent pretrial rulings."). This case is no different. The parties are fully capable of avoiding duplication where possible, and as Hangtime has indicated,

this effort should not be hard to achieve.  (*See* Dkt. 1-1 at 4 ("all parties will seek the same or substantially similar documentary evidence and depose the same or substantially similar witnesses.")).

Hangtime's second argument—that the risk of inconsistent class determinations warrants MDL centralization and transfer—is similarly unconvincing.  Where minimal actions are pending, any concerns regarding inconsistent class-related rulings can be avoided without JPML involvement.  *See In re S. Ry. Employment Practices Litig.*, 441 F. Supp. 926, 927 (J.P.M.L. 1977) (finding MDL centralization and transfer unnecessary, despite the possibility of inconsistent class-related rulings because "communication and cooperation between the two concerned district courts . . . coupled with the cooperation of the parties, would be sufficient to . . . minimize the possibility of conflicting class determinations or other pretrial rulings."); *In re: Am. Exp. Co. Anti-Steering Rules Antitrust Litig.*, 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) ("The courts can also coordinate their efforts in order to avoid as much as practicable inconsistent pretrial rulings.")  Here, cooperation between the parties in *Goodman* and *Kozlow*, and/or coordination by the Courts, could easily eliminate any risk of inconsistent pretrial class-related rulings.

Accordingly, Hangtime has failed to establish that MDL centralization and transfer of actions pending in two districts would promote efficiency, especially efficiency that could not otherwise be easily obtained through coordination by the Parties or the Courts involved.

## II.    Should the JPML Find MDL Centralization and Transfer Appropriate, the Related Actions Should Be Transferred to the Northern District of Illinois.

In the alternative, should the JPML determine that consolidation and transfer is appropriate, the Northern District of Illinois—taking into account the location of three of the four actions, the convenience of the Parties and third-party witnesses, and Judge Bucklo's

institutional knowledge of this litigation and the TCPA—is the most appropriate forum.

In determining the most appropriate forum for transfer, the JPML considers the following non-exhaustive factors: (1) whether the parties agree on a transferee forum; (2) the location of the parties and witnesses; (3) the centrality of the location for the convenience of the parties and witnesses; (4) where the cases are pending; (5) the congestion of the potential transferee forum's docket; (6) the judge's familiarity with the issues involved; and (7) where discovery has occurred and litigation has progressed.  *See In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001); *In re SIGG Switzerland (USA), Inc., Aluminum Bottles Mktg. and Sales Pracs. Litig.*, 682 F. Supp. 2d 1347, 1349 (J.P.M.L. 2010); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 20.131 (2013).  All of these factors favor transfer to the Northern District of Illinois.

## A.     A Majority of the Plaintiffs Agree that the Related Actions Should Be Transferred to the Northern District of Illinois.

In considering where to transfer an MDL, "the Panel considers whether centralization outside the plaintiffs' original choice of forum is necessary to achieve efficiencies and promote justice."  *In re: Dollar Tree Stores, Inc.*, 829 F. Supp. 2d at 1377.  Further, the JPML has often found that the plaintiffs' choice in forum deserves due weight.  *See In re U.S. Postal Serv. Privacy Act Litig.*, 545 F. Supp. 2d 1367, 1369 (J.P.M.L. 2008) (transferring to the plaintiffs' choice of forum over the defendant's choice after according "due credit to plaintiffs' choice of forum"); *In re Ski Train Fire In Kaprun, Austria, on November 11, 2000*, 175 F. Supp. 2d 1379, 1380 (J.P.M.L. 2001) (transferring to "the forum of choice of all plaintiffs"); *In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab. Litig. (No. II)*, MDL No. 2502, -- F. Supp. 2d. --, 2014 WL 661589, at *3 (J.P.M.L. Feb. 18, 2014) (transferring to the

forum that was "the first choice of most plaintiffs"); *In re: Medtronics Intern., Inc., Telephone Consumer Protection Act Litigation*, -- F. Supp. 2d. --, 2013 WL 6705167, at *2 (J.P.M.L. 2013) (transferring a TCPA MDL to where the first-filed and most advanced action was pending).

Here, three of the four plaintiffs—including plaintiffs in the first three filed actions— agree that the Northern District of Illinois is most appropriate venue for these actions. By contrast, only Hangtime and the plaintiff in the competing *Kozlow* action (who actually resides in Tennessee) favor the Northern District of California. Accordingly, the first factor weighs in favor of transfer to the Northern District of Illinois.

**B.     Three of the Four Related Actions Are Pending in the Northern District of Illinois, and the Litigation Has Progressed the Furthest in this District.**

Not surprisingly, the JPML favors transferring actions to the forum where a majority of the actions are already located, and especially where multiple actions have already been consolidated. *See In re High Pressure Laminate Antitrust Litig.*, MDL No. 1368, 2000 WL 33180479, at *1 (J.P.M.L. Oct. 6, 2000) (transferring to the forum "in which the vast majority of constituent actions are pending before one judge."); *In re European Rail Pass Antitrust Litig.*, MDL No. 1386, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (transferring to the forum "in which the vast majority of constituent actions are pending and consolidated before one judge"); *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 939 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) (transferring to the forum in which "[t]he majority of the related actions are pending . . . including the first-filed and most advanced action."); *In re Koratron*, 302 F. Supp. 239, 243 (J.P.M.L. 1969) (finding the location of the majority of the pending cases "certainly relevant to the selection of a proper transferee forum").

Relatedly, the JPML favors forums where the actions have progressed the furthest. *See In re: Mentor Corp. ObTape Transobturator Sling Products Liab. Litig.*, 588 F. Supp. 2d 1374,

13

1375 (J.P.M.L. 2008) (transferring cases to the Middle District of Georgia "because five of the constituent actions—including the first-filed action—are pending there, and those actions appear to be somewhat more advanced than the other seventeen actions"); *In re L. E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) (favoring a forum where the action had progressed significantly relative to the alternative forum); *In re IBM*, 302 F. Supp. 796, 800 (J.P.M.L. 1969) ("just and efficient conduct of these actions will be best furthered by their transfer to a district wherein the assigned judge is already familiar with the proceedings and will be able to insure that consolidated pretrial proceedings are conducted fairly and expeditiously"); *In re Celotex Corp. "Technifoam" Products Liab. Litig.*, 68 F.R.D. 502, 505 (J.P.M.L. 1975) (transferring actions to the forum where most, as opposed to one, of the actions were pending and where the actions were more developed).

Here, three of the four Related Actions are already—or soon will be—pending before Judge Bucklo in the Northern District of Illinois. Judge Bucklo has already entertained three motions related to the Related Actions—a motion for leave to amend, a motion to stay, and a motion to reassign and consolidate—held a status hearing, a motion hearing, and entered a case management order, and discovery is already well underway in *Goodman*. Judge Bucklo is the judge most familiar with the nature of the Related Actions. On the other hand, *Kozlow* wasn't even assigned a district judge until the date of this filing—July 8, 2014. Transferring the Related Actions to the Northern District of California—where the pending action is in its infancy— would be akin to transferring the Related Actions to a forum where no case is currently pending. *See In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) ("We are reluctant to transfer this litigation to the Eastern District of Virginia because no actions are pending there").

Accordingly, the fact that three of the four Related Actions are pending—or will soon be pending—before Judge Bucklo in the Northern District of Illinois, that the most significant litigation has occurred there, and that Judge Bucklo is particularly familiar with the litigation all support transfer to that district.

### C.   The Northern District of Illinois, and Judge Bucklo in Particular, Have the Capacity and Expertise to Preside over the Related Actions.

There should also be little question that the Northern District of Illinois' substantial experience overseeing complex TCPA class actions weigh in favor of transfer there.  As outlined above, one of the JPML's primary considerations is whether a proposed transferee court has the resources and experience necessary to adequately oversee the litigation.  *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1380; *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007).  In so doing, the JPML also considers whether the proposed transferee forum is "overtaxed with multidistrict dockets" and whether it has the resources necessary to devote the requisite time to the litigation. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1380.  Here, the Northern District of Illinois and Judge Bucklo easily satisfy those considerations.[3]

To start, the Northern District of Illinois has developed a substantial body of TCPA case law, having entertained dozens of TCPA suits and issued numerous published opinions regarding specifically spam text message cases.  *See, e.g.*, *Lozano v. Twentieth Century Fox Film Corp.*,

---

[3]     Further, the Northern District of Illinois is frequently found to be a preferable forum for multidistrict litigation given its central geographic location.  *See In re: Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1367 (J.P.M.L. 2012).  This is notable considering that the Plaintiffs in the Related Actions are scattered—Goodman and Salam reside in Cook County, Illinois, while Sims resides in Massachusetts and Kozlow resides in Tennessee.  Likewise, Hook Mobile—the marketing vendor that Hangtime hired to transmit the text messages at issue—is located in Virginia.  Thus, the centrally located Northern District of Illinois presents a much more reasonable location for the parties than does the Northern District of California.

702 F. Supp. 2d 999 (N.D. Ill. 2010); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013); *Sterk v. Path, Inc.*, -- F. Supp. 2d --, 13-cv-2330, 2014 WL 2443785 (N.D. Ill. May 30, 2014); *Sojka v. DirectBuy, Inc.*, -- F. Supp. 2d --, 12-cv-9809, 2014 WL 1304234 (N.D. Ill. Mar. 31, 2014).[4]  Likewise, Judge Bucklo—a jurist with thirty years of experience as a magistrate and federal judge—is no stranger to MDL litigation or TCPA cases.  *See In re Synthroid Mktg. Litig.*, No. 97-cv-6017 (N.D. Ill.); *In re McDonald's French Fries Litig.*, No. 06-cv-4467 (N.D. Ill.); *see also Charvat v. Allstate Corp.*, 13-cv-7104, 2014 WL 866377 (N.D. Ill. Mar. 5, 2014) (prerecorded voice call TCPA action); *Desai v. ADT Sec. Servs., Inc.*, 11-cv-1925, 2011 WL 2837435 (N.D. Ill. July 18, 2011) (same); *Garrett v. Ragle Dental Lab., Inc.*, 10-cv-1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010) (unsolicited fax TCPA action).

Beyond experience, docket congestion also favors transfer to the Northern District of Illinois.  Indeed, by the end of 2013, the Northern District of Illinois had 530 filings per judge on a weighted basis, which, while high, is substantially less than the Northern District of California, which had 616.[5]  Further, the median time for a civil action to reach final disposition in the Northern District of Illinois is 6.8 months, compared to 7.8 months in the Northern District of California.  Likewise, the Northern District of Illinois currently has sixteen multidistrict cases pending (with none before Judge Bucklo), compared to eighteen in the Northern District of California (including two currently pending before Judge Yvonne Gonzalez Rogers).[6]

---

[4]      Indeed, the recently decided *Sterk* action presented the nearly identical factual scenario as the instant litigation, involving, as Goodman believes, nearly identical text message transmitting equipment, which the court in *Sterk* held on summary judgment constituted an ATDS.  *Sterk v. Path, Inc.*, 2014 WL 2443785.

[5]      *See United States District Courts – National Judicial Caseload Profile*, United States Courts, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagement Statistics/district-courts-december-2013.aspx (last accessed July 8, 2014).

[6]      *See MDL Statistics Report – Distribution of Pending MDL Dockets*, United States Judicial Panel on Multidistrict Litigation, *available at* http://www.jpml.uscourts.gov/pending-

Thus, the Northern District of Illinois has the experience and resources necessary to handle the instant proceedings.

### D.    Transfer to the Northern District of California Will Not Further The Efficient Conduct of This Litigation.

Here, Hangtime seeks to transfer the Related Actions to the Northern District of California because: (1) the *Kozlow* Action is pending there; (2) Hangtime and its attorneys are located in San Francisco; (3) the majority of discovery will take place in San Francisco; and (4) the Northern District of California is "well-equipped" to consider TCPA litigation.  (Dkt. 1-1 at 6-9.)  None of these reasons require transfer to the Northern District of California.

First, Hangtime informed Goodman that it would be moving for MDL consolidation and transfer *before* the *Kozlow* action was ever filed.  (*See Goodman*, Dkt. 19 (noting that Hangtime brought its desire to seek MDL transfer to Goodman's attention on May 12, 2014).)  Thus, the fact that *Kozlow* is pending in the Northern District of California is a fortuitous coincidence at best.  In any event, the *Kozlow* action is the least developed of the Related Actions—until the date of this filing, it hadn't even been assigned a district judge.

Taking Hangtime's second and third arguments together, neither the location of the evidence nor the location of Hangtime's attorneys is particularly relevant here.  In fact, Hangtime has failed to identify any witnesses or physical evidence located in the Northern District of California, and thus, has failed to make a showing that transfer is appropriate.[7]  This is especially true given that Hook Mobile—the actual marketing entity that sent the text messages at issue—is based in Virginia, and thus, a majority of the witnesses and evidence, including the autodialing

---

mdls-0 (last accessed June 24, 2014).  Kozlow's citation to these same figures (Dkt. 14 at 11) is wildly inaccurate—the Northern District of Illinois does not have 40 pending MDLs, it has 16.

[7]        It should be noted that Hangtime has also failed to timely serve its Rule 26(a)(1) initial disclosures in *Goodman*, which pursuant to Judge Bucklo's case management order, were due on July 2, 2014.  (*Goodman*, Dkt. 20.)

equipment at issue, is likely to be located there.  Further, in evaluating motions to transfer, courts generally discount the location of discovery, where—as is the case here—discovery will be predominantly electronic.  *See, e.g.*, *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. 2009) ("Because electronic information can be accessed conveniently in any number of locations . . . it does not follow that transfer to the location of the stored information is more convenient for anyone."); *5381 Partners LLC v. Shareasale.com, Inc.*, 12-cv-4263, 2013 WL 5328324, at *14 (E.D.N.Y. Sept. 23, 2013) ("With respect to the location of documents . . . the Court does not view it as particularly significant given that we live in a technological age, where electronic document production has become the norm in litigation.").

Further, though Goodman concedes depositions of Hangtime representatives will likely be conducted near Hangtime's headquarters, this would be the case regardless of where the case was pending.  *See* Fed. R. Civ. P. 45(c)(1)(A).  And the inconvenience of a limited number of day-long trips to take depositions pales in comparison to the inconvenience that would occur if the three soon-to-be consolidated actions were relocated in full to a district court, with no judge assigned, and with no prior experience in the action.  This is of course not to mention that *no Plaintiff* in the Related Actions resides in California.  To the extent depositions of the Plaintiffs will occur, they would likely occur in Illinois, Massachusetts, and Tennessee.  Similarly, the inconvenience of Hangtime's counsel—which is not a relevant consideration, *see In re DirectBuy, Inc., Mktg. & Sales Practices Litig.*, 682 F. Supp. 2d 1349, 1350-51 (J.P.M.L. 2010)—is unavailing considering that Goodwin Proctor LLP is one of the largest nationwide firms in the country (850 attorneys in eight offices), with significant resources at its disposal.[8]  If the convenience of counsel were a relevant consideration, then due weight should be given to the

---

[8]     On the same note, Hangtime's status as a "small start-up company" is belied by the fact that they hired one of the largest and most expensive law firms in the country.

fact that three of the five law firms prosecuting the cases—including one of the two law firms representing Kozlow—are located in Chicago, Illinois.

Finally, while Goodman does not dispute that the Northern District of California is experienced and "well equipped" to handle TCPA litigation,[9] transfer to that district will not promote the just and efficient conduct of this litigation.  As noted above, three of the four actions are pending, or soon will be pending, before Judge Bucklo, while the sole action in the Northern District of California has only recently been assigned to a district judge.  Judge Bucklo is the judge most knowledgeable in this litigation and is well versed in both MDL and TCPA proceedings.  Three of the four Plaintiffs support centralizing the Related Actions in the Northern District of Illinois before Judge Bucklo.  Further, two of the four Plaintiffs reside in the Northern District of Illinois, while no plaintiff resides in the State of California.  And finally, there is no indication that the discovery at issue—most of which is electronically stored—cannot be as easily conducted in the Northern District of Illinois.

For these reasons, the Northern District of Illinois presents a forum significantly more convenient than the Northern District of California.

## CONCLUSION

For the reasons stated above, Plaintiff Zachary Goodman, Derrick Sims, and Ismail Salam respectfully request that the JPML deny Hangtime's Motion to Transfer the Related Actions, or, in the alternative, that it consolidate the Related Actions in the Northern District of Illinois.

---

[9]     Goodman notes that Hangtime's implication—that the FCC rulings somehow provide greater clarification to the Northern District of California than elsewhere (Dkt. 1-1 at 9)—is flat wrong.  *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (finding FCC orders binding on the Seventh Circuit District Courts under the Hobbs Act).

Respectfully submitted,

Dated: July 8, 2014                    By: /s/ Rafey S. Balabanian

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Zachary Goodman*

David Pastor
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel:  617.742.9700

*Counsel for Plaintiff Derrick Sims*

Katrina Carroll
kcarroll@litedepalma.com
LITE DEPALMA GREENBERG, LLC
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel: 312.750.1591

*Counsel for Plaintiff Ismael Salam*

## <u>CERTIFICATE OF SERVICE</u>

I, Rafey S. Balabanian, an attorney, hereby certify that on July 8, 2014, I caused the foregoing ***Plaintiffs' Goodman's, Sims', and Salam's Response in Opposition to Defendant Hangtime Inc.'s Motion to Transfer under 28 U.S.C. § 1407***, to be filed using the United States Judicial Panel on Multidistrict Litigation's CM/ECF System, which will send notification of such filing to all counsel of record.

/s/ Rafey S. Balabanian

21